IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jamie Flores,<br><br>    Petitioner,<br><br>vs.<br><br>Terry L. Stewart, et al.,<br><br>    Respondents. | No. CV 02-2065-PHX-DGC (MS)<br><br>**SUPPLEMENTAL REPORT AND RECOMMENDATION** |

TO THE HONORABLE DAVID G. CAMPBELL, UNITED STATES DISTRICT JUDGE:

On June 9, 2004, the undersigned submitted a Report and Recommendation (Doc. # 22) to Judge Campbell on the merits of Petitioner's Petition for Writ of Habeas Corpus (Doc. # 1). On October 20, 2004, the R&R was rejected and the case was referred back to the undersigned for further proceedings (Doc. # 29). Specifically, the undersigned was directed to consider the issues identified in the Court's Order. Included in the Order were citations to Ninth Circuit cases which discuss the duty of counsel to investigate a criminal defendant's mental condition when information is made known reflecting a possible mental impairment under Strickland v. Washington, 466 U.S. 668, 691 (1984), unless the circumstances suggest otherwise in the sound exercise of professional December 9, 2005 judgment by counsel. Further, the undersigned was asked to:

>    (1) determine whether counsel was on constructive notice of Petitioner's illegal drug use, mental condition, and prescribed

>    medication, and if so, whether counsel's failure to investigate was unreasonable, and
>
>    (2) determine whether Petitioner's mental condition and counsel's failure to investigate undermines confidence in Petitioner's guilty pleas and sentence.

(Doc. # 26).

The undersigned appointed counsel for Petitioner and required both Petitioner and Respondents to submit simultaneous briefs "addressing the issue(s) and case law cited by Judge Campbell in the October 20, 2004 Order." (Doc. # 31).

On September 30, 2005, Petitioner and Respondents filed simultaneous supplemental briefs. (Docs. # 39 and 40). Petitioner contends that the Ninth Circuit cases articulated in Judge Campbell's Order are relevant to Petitioner's case and demonstrate that counsel has a duty to make an investigation into a criminal defendant's mental state. Additionally, Petitioner argues that counsel was on notice that Petitioner was suffering from a mental condition and as a result of this notice, counsel's subsequent failure to investigate Petitioner's mental condition constituted prejudicial ineffective assistance of counsel. Petitioner further argues that an evidentiary hearing is required.

Respondents' maintain that Strickland does not impose an affirmative duty upon counsel to investigate a defendant's mental state in the absence of actual or constructive notice of a mental condition. In the alternative, Respondents' argue that even if counsel was deficient, Petitioner did not suffer prejudice.

**I. Was Petitioner's Counsel on Actual or Constructive Notice as to Petitioner's Mental Condition**

As discussed in the undersigned's original Report and Recommendation, the only evidence of Petitioner's mental condition is as follows: (1) Petitioner's affidavit avowing, "I also believe that I told Mr. Syme something about my mental condition"; (2) medical records indicating Petitioner was taking psychotropic medication before and during his change of plea hearing; (3) medical records indicating Petitioner was housed in the Maricopa County Jail's mental ward for suicidal thoughts before his

- 2 -

change of plea hearing; (4) evidence Petitioner had attempted suicide in 1990; and (5) evidence indicating Petitioner used illegal drugs, including methamphetamine, cocaine, and marijuana. (Doc. # 1, Ex. C).

The only purported support of actual notice of Petitioner's mental condition is the statement in Petitioner's affidavit appended to his Petition for Post-Conviction Relief. That statement is simply insufficient to constitute actual notice, in the absence of any other objective indication at the time of entry of his guilty plea that Petitioner was suffering from a mental condition. First, Petitioner's statement is equivocal at best and it finds no corroboration in the record.[1] Second, counsel's affidavit appended to Petitioner's Petition for Post-Conviction Relief squarely contradicts Petitioner's assertion:

> 3. At the time I represented [Petitioner] I had no indication that he suffered from a mental illness, condition, disease or defect. I specifically did not know that he was taking anti-psychotic medications prescribed to him in the jail for psychotic symptoms.
>
> 4. I did not know that he heard and/or talked to voices in his head, or that he had any paranoia or suicidal thoughts.
>
> 5. If I had seen or been told anything that suggested any of the above, I would have investigated further. Additional steps would have been to inquire of the treating doctor(s) and request a Rule 11 examination.

(Doc. # 13, Exhibit B).

In denying relief, the post-conviction court necessarily resolved this factual dispute in favor of Petitioner's counsel, and against Petitioner, who failed to provide any evidence of counsel's knowledge. Indeed, Petitioner's appointed counsel even acknowledged in the post-conviction petition she prepared that the transcripts and

---

[1] Contra Seidel v. Markle, 146 F.3d 750, 756 (9th Cir. 1998), where counsel's handwritten notes in the case file corroborated Seidel's averment that he told counsel of his mental illness.

- 3 -

record failed to reveal Petitioner's mental condition.[2] (Doc # 13, Exhibit M). This concession bolsters the conclusion that counsel for Petitioner during the plea proceeding was unaware of Petitioner's mental condition because there was no objective indication of it. As a result, it would be error to conclude that counsel was on actual notice of Petitioner's mental illness when that conclusion is unsupported by the record. See Lambert v. Blodgett, 393 F.3d 943, 981 (9th Cir. 2004) (overturning the district court's grant of a habeas petition where the district court's factual conclusions are not supported by the record).

As to constructive notice, Petitioner concedes that the record on constructive notice has not been developed. (Doc. # 39, at 2). The only evidence in the record now as to constructive notice are those records housed in the Maricopa County Jail detailing Petitioner's prescriptions and overnight stay in the jail's mental ward. (Doc. # 1, Exhibit C). However, those documents are insufficient to constitute constructive notice as counsel had no cause to request them. In this regard, Hensley v. Crist, 67 F.3d 181, 186 (9th Cir. 1995), provides a useful comparison to this case. Hensley asserted that his counsel was ineffective for failing to assert an insanity defense. However, the only evidence of Hensley's mental illness was a collateral police report opining that Hensley was "mentally disturbed and posed a danger to himself and others." Id. In affirming the denial of Hensley's habeas petition, the Ninth Circuit held that the police report "is insufficient to put [] counsel on notice. Notice to counsel that an insanity defense may be appropriate requires a stronger indication of mental illness in the client's record such as past institutionalization or highly unusual behavior." In so holding, the court rejected

---

[2] Petitioner refused to allow post-conviction counsel to file this post-conviction petition because it did not include all of the claims Petitioner desired to raise. Petitioner subsequently filed a post-conviction petition *pro per*.

- 4 -

Hensley's argument that his case was akin to Evans v. Lewis and others where counsel had actual knowledge of the defendant's mental illness.[3]

Moreover, as noted in the original Report and Recommendation, there was substantial evidence in the record that Petitioner was able to plan and execute several crimes, further attempted to evade police detection, and did not suffer from a mental condition that impaired his ability to form the requisite *mens rea* for the charged offenses or rendered him incompetent to plead guilty.[4] (Doc. # 13, Exhibit F and Exhibit Z, at 18, 27).

Further, Petitioner failed to tell *anyone* about his mental condition, including the probation officer when preparing his pre-sentence report and the trial judge, when specifically asked if he had taken medication in the last 24 hours. Petitioner's own family and friend also failed to make any reference to Petitioner's mental

---

[3] See discussion of Evans, infra.

[4] It is important to make a distinction about Petitioner's claims. In Petitioner's post-conviction petition, he argued that his guilty plea was "not [a] knowing, intelligent and voluntary waiver of his rights" in light of his mental condition, essentially arguing that he was not competent to enter a guilty plea. This argument differs from Petitioner's argument in his habeas petition. Here, Petitioner argues that his attorney was not effective because he failed to investigate Petitioner's mental condition as a possible defense to the charged offenses or to investigate Petitioner's competency to plead guilty.

illness.[5]  Under these circumstances, therefore, counsel's failure to investigate cannot be considered ineffective assistance.[6]

---

[5] As discussed in the undersigned's original Report and Recommendation (Doc. # 22), Petitioner offers as evidence in his post-conviction petition the proposed testimony of Dr. Raikhelkar, his Maricopa County Jail healthcare provider, that "[he] makes it his practice to call the Forensic Unit when he feels an inmate has 'Rule 11' issues, regardless of whether such a motion has been filed by the attorney [and that he did not take such action in this case." (Doc. # 13, Exhibit N, at 4–5). The doctor's averment is yet further proof that there was no objective indication that Petitioner was suffering from a mental illness of which Petitioner's counsel was made aware.

[6] Other circuits which have dealt with this precise issue. See United States v. Miller, 907 F.2d 994, 998–99 (10th Cir. 1990), holding:

> The adequacy or reasonableness of an attorney's action is necessarily conditioned by the defendant's own actions or inaction.  Thus, Miller now faults Calder for failing to investigate his mental health and behavioral history.  But, Miller has not established that Calder was even aware until after trial, when the judge ordered a probation report, that Miller had ever seen psychiatrist.  With the exception of those instances where a defendant's behavior or demeanor should communicate to his counsel or the Court that the defendant suffers from a mental disability, incapacity or impairment, and investigation, such as the investigation that Miller claims his trial attorney failed to conduct, cannot be charged as a claim of "ineffective assistance of counsel" when the essential and foundational information required to trigger such an investigation is withheld from the defendant's attorney by the defendant himself.  As this court noted, "[t]he reasonableness of an attorney's decision not to conduct an investigation is directly related to the information the defendant has supplied."

Id. (citing Coleman v. Brown, 802 F.2d 1227, 1233 (10th Cir. 1986). See also Riley v. Taylor, 277 F.3d 261, 305–306 (3rd Cir. 2001) ("[Petitioner] has not argued that counsel in a capital case must always seek a mental examination of the defendant, and cases from other circuits reject that proposition. Instead, they hold that a case-by-case determination must be made and that counsel is not ineffective if he or she has no reason to think that a mental examination would be useful.").

- 6 -

Strickland mandated that "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. In that vein, based on the circumstances of Petitioner's case, it would be unreasonable to determine that counsel should have inquired further into Petitioner's mental condition, when there was no actual or constructive notice thereof. Therefore, counsel's actions did not contravene Strickland. Further, the absence of any objective indication of Petitioner's mental illness is what separates Petitioner's case from the body of Ninth Circuit case law cited in the Court's Order of referral,[7] and inferentially supports the conclusion that there is no affirmative duty to *sua sponte* investigate a criminal defendant's mental state in the absence of any indication of a basis for doing so.

### A. The Ninth Circuit Cases

The Order of referral for further proceedings states that a number of Ninth Circuit cases "hold that counsel has an affirmative duty to throughly investigate a defendant's mental state if there is *any available* evidence indicating that the defendant is impaired." See Order filed October 20, 2004 at 5, citing Evans v. Lewis, 855 F.2d 631, 637 (9th Cir. 1988). As explained below, neither Strickland nor the Ninth Circuit cases mandate investigation of a client's mental state in the absence of notice thereof, save for capital habeas cases where counsel's responsibilities are undeniably greater, at least with respect to the penalty phase of the trial.

The cases referenced in the Court's Order are distinguishable from Petitioner's. To begin, in Evans, evidence of a capital defendant's mental illness was known by trial counsel prior to his sentencing. Evidence included: a statement by the trial judge declaring that "Defendant is in need of psychiatric treatment" and

---

[7] See discussion, *infra*.

1  documentation in the pre-sentence report that Evans had been incarcerated at a
2  mental facility for inmates and had attempted suicide.   Evans, 855 F.2d at 636.
3       Deutscher presents a "virtually identical case [to Evans]," Deutscher v.
4  Whitley, 884 F.2d 1152, 1160 (9th Cir. 1989), where counsel had specific
5  knowledge about his client's mental illness, including knowledge that Deutscher had
6  been hospitalized for mental problems in the past, and of a medical report from a
7  psychiatrist. Id.  More egregious in Deutscher, however, was counsel's argument
8  during the penalty phase of his client's capital trial, that the defendant "must have
9  had some sort of mental problem," but counsel failed to present any of the available
10 evidence of a mental illness. Id.  Consequently, he admitted that his conduct in this
11 instance was deficient. Id.
12      Douglas v. Woodford, 316 F.3d 1223 (9th Cir. 2003), reveals another example
13 where a capital defendant's counsel was aware of his mental illness and still failed
14 to present any evidence of that illness during mitigation.
15      Again, the evidence known by Douglas' counsel was significant: "trial counsel,
16 George Peters, recognized that a psychiatric defense might be an option.  Early in
17 the case, he had a psychiatrist, Dr. Sharma and a psychologist, Dr. Rogers,
18 appointed to help. . . . Peters had a difficult time getting him to concentrate on his
19 defense, and initially engaged the mental health experts to assist in this problem."
20 Douglas, 316 F.3d at 1085.  Based on that knowledge, the court found, it was *then*
21 incumbent on counsel to investigate further. Id. at 1086.  Counsel did request the
22 file of Douglas' offense, but incredibly failed to discover overwhelming evidence in
23 the file regarding Douglas' mental illness. Id.  As a result, the Ninth Circuit found
24 that counsel's failure constituted deficient performance. Id.
25      Douglas also confirms that counsel has no duty to uncover potential mitigating
26 evidence when nothing has put him on notice that it exists. Id. at 1088 ("[C]ousel
27 [is] not ineffective for failing to uncover a family history of mental illness where
28 counsel's investigators spoke with family members and friends who might have had

such information, but none of them reported any history of illness) (citing Babbitt v. Calderon, 151 F.3d 1170, 1174 (9th Cir. 1998)).

Likewise in Jennings v. Woodford, 290 F.3d 1006 (9th Cir. 2002), there was ample notice to counsel of Jennings' mental defect. Jennings' counsel did not review volumes of medical records, except to determine whether his client had undergone a vasectomy. Had he reviewed those records, counsel would have discovered a wealth of mental illness documentation. Moreover, the Jennings court makes clear that counsel was not simply on notice, but had substantial knowledge of his client's mental problems:

> Mr. Oliver knew, for example, that Mr. Jennings was a long-term methamphetamine addict who had used the drug on the night of the homicide. Mr. Oliver knew his client had told police he had been "strung out" on the drug for over a year. And that he had attempted suicide. And that his ex-wife told police he was "crazy" and had been diagnosed as schizophrenic. And that he had a long history of injuring himself intentionally and pouring liquids in the resulting wounds, thereby causing gangrene. And that he had been involuntarily committed by a judge for psychiatric evaluation. And that he appeared to have been coming off drugs during his videotaped interview with police. And that the newly-minted paralegal Mr. Oliver had hired thought there was something "seriously wrong" with Mr. Jennings. And that friends and co-workers agreed.

Jennings, 290 F.3d at 1015.

Further distinguishing Evans, Deutscher, Douglas, and Jennings from Petitioner's case is the context in which they arose. These cases demonstrate that the legal standard for ineffective assistance of counsel is different in the context of a capital case. See Silva v. Woodford, 279 F.3d 825, 843 (9th Cir. 2002) ("Our holdings in Ainsworth, Bloom, and Hendricks are illustrative but not exhaustive of the breadth of a criminal defendant's constitutional protection against his attorney's failure to investigate mitigating evidence when defending his client against a capital sentence.").

As a result, it would be far from conclusive to view Petitioner's case through the lens of capital habeas jurisprudence.[8] The Supreme Court has solidified this heightened duty in both <u>Williams v. Taylor</u>, 529 U.S. 362 (2000) and <u>Wiggins v. Smith</u>, 539 U.S. 510 (2003) (finding counsel unconstitutionally ineffective for failing to present mitigating evidence during the penalty phase of defendants' capital trials). <u>Evans</u>, <u>Deutscher</u>, and <u>Douglas</u>, and <u>Jennings</u> acknowledge what <u>Wiggins</u> and <u>Williams</u> have reaffirmed: that courts must be "especially cautious in protecting a defendant's right to effective counsel at a capital sentencing hearing. The Constitution prohibits imposition of the death penalty without adequate consideration of factors which might evoke mercy." <u>Deutscher</u>, 844 F.2d at 1161.[9]

The remaining four cases cited in the referral order are equally factually dissimilar. <u>Sanders v. Ratelle</u>, 21 F.3d 1446 (9th Cir. 1994), presents a scenario where counsel had knowledge of a murder confession from the defendant's brother, but counsel failed to even *interview* the confessor. The court noted that "these confession were not belated efforts designed to save a brother who had been convicted. They were made from the very inception of [these] proceedings, and

---

[8] <u>Hendricks v. Calderon</u>, 70 F.3d 1032, 1043 (9th Cir. 1995) ("Evidence of mental problems may be offered to show mitigating factors in the penalty phase [of a capital trial], even though it is insufficient to establish a legal defense to conviction in the guilt phase.")

[9] Indeed, Justice Scalia regularly remarks on the Supreme Court's adoption of a "death is different" jurisprudence when it comes to direct and habeas criminal appeals. See <u>Atkins v. Virginia</u>, 536 U.S. 304, 337 (2002) (Scalia, J., dissenting), <u>Simmons v. South Carolina</u>, 512 U.S. 154, 185 (1994) (Scalia, J., dissenting) ("I fear we have read today the first page of a whole new chapter in the 'death-is-different' jurisprudence which this Court is in the apparently continuous process of composing. It adds to our insistence that state courts admit "all relevant mitigating evidence[.]"). In that regard, the Supreme Court has imposed a duty on counsel to ensure that all possible mitigating evidence is presented during the penalty phase of a capital trial. See, e.g., <u>Tennard v. Dretke</u>, 542 U.S. 274 (2004); <u>Atkins v. Virginia</u>, 536 U.S. 304 (2002); <u>Eddings v. Okalhoma</u>, 455 U.S. 104 (1982); <u>Lockett v. Ohio</u>, 438 U.S. 586 (1978).

[were] all internally consistent." Counsel's inexplicable failure to investigate his client's arguably meritorious claim of actual innocence is what prompted the Ninth Circuit to grant Sanders' habeas petition. Id. at 1456, 1460.

Likewise in Seidel v. Markle, 146 F.3d 750 (9th Cir. 1998), there was ample evidence in the trial record to alert counsel of his client's mental illness, including Seidel's bail report, which reflected prior hospitalization for his mental problems. More telling were counsel's own personal notes which corroborated Seidel's testimony that he told counsel of his mental illness. Even with this knowledge, counsel still failed to conduct any investigation into his client's mental condition, and the Ninth Circuit found deficient performance. Id. at 756–57.

United States v. Burrows also presents another situation where the defendant's attorney had actual knowledge of his client's stay in a mental hospital and subsequent treatment for chronic paranoid schizophrenic disorder, yet failed to investigate a possible insanity defense. The defendant, according to doctors, could not differentiate between right and wrong and "could not carry on a logical conversation". United States v. Burrows, 872 F.2d 915, 916–18 & n.2. As a consequence, the Ninth Circuit remanded for an evidentiary hearing to determine whether the proffered psychiatric evidence would have changed the result of the trial.

Finally, in Turner v. Douglas, counsel's own case file contained a substantial amount of evidence of Turner's mental history, researched and investigated by Turner's first attorney. The Ninth Circuit noted that, "[o]n the day that the court granted Turner's motion for substitution of counsel, Wilensky [the first attorney] turned over to [new counsel] 'all subpoenas, psychiatric letters, the police reports, [and] the results of [her] discovery,' and promised to also forward to him a summary of her investigation reports." Turner, 158 F.3d at 452–53. Even after receiving all of this material, "[counsel] did almost nothing . . . failing to perform even the most basic investigative tasks." Moreover, "[counsel] admit[ted] that his only preparation

for trial consisted of reviewing the transcript of the preliminary hearing and spending between twenty and forty five minutes interviewing Turner." Id. Accordingly, the Ninth Circuit determined that counsel's failure to: (1) present any defense to the murder charge; (2) investigate the wealth of material provided to him by the first attorney; and (3) investigate the state's case constituted ineffective assistance.

To summarize, counsel in Evans, Deutscher, Douglas, Jennings, Sanders, Seidel, and Burrows all had *actual* knowledge of their client's mental illness, but failed to investigate at all for a possible affirmative defense or for presentation during the penalty phase of a capital trial. In Turner, counsel's predecessor compiled a significant amount of research into Turner's mental state, but counsel simply failed to read it. Those scenarios are not comparable to Petitioner's case. These cases do not demonstrate that Petitioner is entitled to relief where counsel had no knowledge of Petitioner's mental illness, where it is reasonable to believe that information of such an infirmity would have been disclosed to counsel or the court by relatives and a close friend of the Petitioner, and where the Petitioner, when asked by the judge who presided over the guilty plea proceeding whether he was taking medication, the Petitioner stated that he was not.

Moreover, apart from being factually distinguishable from Petitioner's case, it has not been demonstrated that the state court's denial of Petitioner's post-conviction petition "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."[10] Because there is no Supreme Court precedent imposing a duty on counsel to investigate a defendant's potential mental

---

[10] Lambert v. Blodgett, 393 F.3d 943, 974 (9th Cir. 2004) ("While circuit law may be 'persuasive authority' for purposes of determining whether a state court decision is an unreasonable application of Supreme Court law, only the Supreme Court's holdings are binding on the state courts and only those holdings need be reasonably applied.") (quoting Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003).

illness in the absence of any notice thereof, Petitioner's habeas petition should be denied.

### II. Do Petitioner's Mental Condition and Counsel's Failure to Investigate Undermine Confidence in Petitioner's Guilty Plea and Sentence

The final question from Judge Campbell is whether counsel's failure to investigate and this Court's knowledge of Petitioner's mental condition undermine confidence in Petitioner's guilty plea and sentence. This analysis goes to whether Petitioner suffered prejudice on account of counsel's action. However, as discussed above, because counsel was not ineffective, the undersigned finds that Petitioner suffered no prejudice and that the failure to investigate the circumstances presented does not undermine confidence in Petitioner's guilty plea and sentence.

As articulated in the original Report and Recommendation, where a Petitioner has plead guilty, ineffective assistance of counsel will be considered prejudicial if it caused the Petitioner to plead guilty rather than go to trial, and the discovery of evidence would likely have led counsel to change his recommendation regarding the plea. Whether counsel would have change his recommendation depends on whether the evidence likely would have altered the outcome of a trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985) (White, J., concurring).

Nothing in Petitioner's claims supports the notion that counsel would have changed his recommendation in view of evidence of Petitioner's mental illness. Moreover, Petitioner's claims do not support the contention that the outcome of a trial would have been different from Petitioner's guilty plea. The evidence of Petitioner's guilt was substantial.[11] The consequence of the evidence against

---

[11] Evidence includes Petitioner's lead role in the charged offenses, his lack of remorse, and his attempt from jail to cover up the crime (Doc. # 13, Exhibits E, F).

- 13 -

Petitioner is that other defenses, including lack of the requisite *mens rea* and incompetency to stand trial or plead guilty, were foreclosed.[12]

Petitioner further argues that if counsel had investigated Petitioner's mental impairment he could have requested a competency hearing pursuant to ARIZ. R. CRIM. P. 11. However, the record does not support the claim that the outcome would have been different had counsel investigated Petitioner's mental infirmity. As articulated above, the psychiatrist at the Maricopa County Jail would have referred Petitioner to the Forensic Unit for Rule 11 testing if he felt it was appropriate. More importantly, the record does support the conclusion that Petitioner was able to consult with counsel with a reasonable degree of understanding, and had an understanding of the proceedings against him.[13]

The trial judge's colloquy and the matters discussed at sentencing soundly demonstrate that Petitioner was able to understand the proceedings against him as required by Godinez v. Moran, 509 U.S. 389, 398–402 (1993). Petitioner lucidly answered all of the court's questions during the plea colloquy, provided an acceptable factual basis for the charges, and explicitly informed the court that he had not taken drugs or medication in the past 24 hours. (Doc. # 13, Exhibit G, at 4). Moreover, the trial court never raised the issue of Petitioner's competence *sua*

---

[12] Petitioner argues that counsel should have investigated a possible diminished capacity defense. (Doc. # 1 at 5). However, Respondents correctly note that Arizona does not recognize a diminished capacity defense. State v. Mott, 931 P.2d 1046, 1051 (Ariz. 1997) ("[T]his court considered and rejected the defense of diminished capacity[.]" As a result, counsel's conduct cannot be considered prejudicial if it would not have changed the outcome.

[13] While Petitioner claims that he was experiencing symptoms of his mental condition, there is no corroboration of this claim in the record. Rather, there is direct evidence in the record to contradict Petitioner's claim, specifically where the jail psychiatrist noted that Petitioner's symptoms were controlled by medication. (Doc. # 13, Exhibit N).

*sponte*, which it is required to do if it appears to the court that competency is in question. Bishop v. Superior Court, 724 P.2d 23, 26 (Ariz. 1986).[14]

Moreover, Petitioner has been unable to demonstrate that a trial would have produced an outcome different from the sentence received in the plea agreement. The plea agreement lowered Petitioner's maximum sentence from multiple consecutive 28 year sentences to five concurrent sentences between 8 and 16 years. Even if Petitioner's counsel had discovered evidence of Petitioner's mental condition, it appears unlikely that he would have counseled Petitioner to go to trial in the face of the overwhelming evidence against Petitioner. See United States v. Keller, 902 F.2d 1391, 1395 (9th Cir. 1990) (articulating the requirement that a prejudice inquiry under Strickland when counsel failed to pursue a potential defense depends largely on whether the defense would have been successful).

Finally, Petitioner has not proffered any evidence or corroboration to his bare assertions that the outcome of a trial would have been different if counsel had investigated and discovered evidence of Petitioner's mental condition.[15] Because there is no indication that counsel would have changed his recommendation to Petitioner to plead guilty, or that any of the evidence of Petitioner's mental condition would have changed the outcome of a trial, the Court cannot conclude that counsels failure to investigate undermines confidence in Petitioner's guilty plea and sentence.

### III. Evidentiary Hearing

The Court has also considered whether to grant Petitioner an evidentiary hearing. However, on the record before the Court Petitioner's allegations do not establish the right to relief. Petitioner has not alleged facts which if true would show that counsel was on actual or constructive notice of his mental illness. As a

---

[14] As discussed in Part I.A., supra, neither Petitioner's father nor his close friend made any reference to Petitioner's mental condition during their testimony.

[15] See discussion Part III, infra.

consequence, as discussed above, counsel was not ineffective for failing to investigate Petitioner's mental state *sua sponte*. Moreover, Petitioner has not demonstrated that a hearing would shed new light on the question of whether counsel's actions were deficient under Strickland. See Totten v. Merkle, 137 F.3d 1172, 1176 (9th Cir. 1998).

In his supplemental brief, Petitioner argues that he is entitled to an evidentiary hearing under Townsend v. Sain, 372 U.S. 293, 313 (1963). However, the only allegation, if true, that would entitle Petitioner to relief is if he actually told counsel of his mental illness.[16] However, Petitioner offered no potential corroboration of that allegation in his petition for post-conviction relief. Indeed, Petitioner did not even allege that corroboration existed, and would be subsequently developed in an evidentiary hearing. Most telling is the weakness of Petitioner's allegation, "I also believe that I told Mr. Syme something about my mental condition." (Doc. # 1, Exhibit C). Petitioner is not even certain he told his counsel about his mental condition. No unequivocal statement has been made by Petitioner that he told his attorney about his medication or other circumstances described in his post-conviction petition. Also absent from the record is any post-conviction report of a psychologist or psychiatrist to the effect that Petitioner was not mentally competent to plead guilty pursuant to the plea agreement.[17] Under these circumstances, an evidentiary hearing is simply not warranted.

**III. Conclusion**

For the foregoing reasons,

---

[16] Campbell v. Wood, 18 F.3d 662, 679 (9th Cir. 1994) ("An evidentiary hearing is not required on issues that can be resolved by reference to the state court record.").

[17] As articulated in note 5, supra, the psychiatrist at the Maricopa County Jail did not believe Petitioner to be incompetent to plead guilty.

- 16 -

**IT IS RECOMMENDED THAT** Petitoner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. #1) be **DENIED** and **DISMISSED WITH PREJUDICE**.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of Appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have ten (10) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. 28 U.S.C. §636(b)(1) and Rules 72, 6(a) and 6(e) of the Federal Rules of Civil Procedure. Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this 12th day of December, 2005.

*Morton Sitver*
Morton Sitver
United States Magistrate Judge